**SO ORDERED.**

**SIGNED this 15 day of June, 2011.**



_____
                         **Stephani W. Humrickhouse**
                        **United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. |
| **SOUTH BAY PROPERTIES, LLC** | **10-04922-8-SWH** |
|     DEBTOR | |
| **SOUTH BAY PROPERTIES, LLC** | Adversary Proceeding No. |
|     PLAINTIFF, | **10-00236-8-SWH** |
|     v. | |
| **BAYSIDE PROPERTY, INC.,
BONNIE N. CHARLTON, and
RONALD L. CHARLTON,** | |
|     DEFENDANTS. | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
GRANTING SUMMARY JUDGMENT FOR DEFENDANTS AND
ALLOWING DEFENDANTS' MOTION TO DISMISS ADVERSARY PROCEEDING**

Two motions are before the court: the motion for summary judgment filed by the debtor/plaintiff, South Bay Properties, LLC ("South Bay"), and the motion to dismiss filed by the defendants, Bayside Property, Inc., Ronald and Bonnie Charlton (collectively, "Bayside"). South Bay contends that a mortgage executed and delivered by South Bay to the defendants is invalid, a

nullity, and unenforceable due to a discrepancy in the dates of the mortgage and the promissory note it purportedly secures. Bayside filed a motion to dismiss the complaint and a response in opposition to South Bay's motion for summary judgment, arguing that applicable South Carolina state law would not require that the mortgage be deemed invalid, and that South Bay should not be allowed to escape the mortgage due to a simple drafting error by South Bay's own attorney. A hearing was held in Raleigh, North Carolina, on April 6, 2011. For the reasons that follow, the court will deny South Bay's motion for summary judgment, enter summary judgment in favor of Bayside, and allow Bayside's motion to dismiss.

## STATEMENT OF CASE

South Bay filed a voluntary petition under chapter 11 on June 18, 2010, and filed a complaint against Bayside on September 16, 2010. Bayside moved to dismiss the adversary proceeding on November 17, 2010. South Bay moved for summary judgment on December 30, 2010. The court consolidated the two motions for hearing, and the issues have been thoroughly briefed by both parties.

## BACKGROUND

The pertinent facts are not in dispute, and the following recitation is taken directly from the admitted allegations in the complaint. South Bay is a North Carolina limited liability company with its principal place of business in Wake County, North Carolina. Defendant Bayside Property, Inc. is a South Carolina corporation, and Ronald Charlton is its registered agent. Defendants Ronald L. and Bonnie N. Charlton are individuals who reside in Charleston, South Carolina, and are the owners and/or officers of defendant Bayside Property, Inc. Complaint ¶¶ 4-6.

In early 2007, South Bay obtained a loan commitment from Sun Trust Bank to fund acquisition and development of the infrastructure of a community to be located in Georgetown, South Carolina, and known as Harbor Club on Winyah Bay, with an anticipated closing date in August or September 2007. Complaint ¶ 7. In July 2007, South Bay obtained a performance bond for infrastructure construction in the amount of $7,900,000 in order to record a subdivision plat and to enable it to sell lots upon acquisition. Complaint ¶ 8. Less than three weeks prior to closing, SunTrust rescinded its loan commitment, and the defendants agreed to provide seller financing. Complaint ¶¶ 10-11. On or about August 22, 2007, Bayside conveyed to South Bay, by general warranty deed, title to certain real property located in Georgetown and described in Exhibit A of the Complaint. See Complaint ¶ 13. The purchase price recited in the deed is $20,850,000. Ex. A p. 1.

On September 11, 2007, South Bay executed and delivered a mortgage in favor of Bayside, pursuant to which South Bay acknowledged its indebtedness to Bayside in the amount of $14,580,662.92. On September 12, 2007, South Bay executed and delivered a promissory note in favor of Bayside with an original principal balance of $14,580,662.92. Complaint ¶¶ 14, 17. Both Bonnie and Ronald Charlton state in their respective affidavits that due to the fact that South Bay is located in North Carolina and Bayside in South Carolina, the parties' financial transactions were conducted wholly or partially via facsimile and/or U.S. Mail. The closing took place in South Carolina and South Bay's execution of the documents took place in North Carolina so "the parties were unable to get both documents fully executed on the same day." Bonnie Charlton Aff. ¶ 9; Ronald Charlton Aff. ¶ 9. Both Bonnie and Ronald Charlton attest that it was their intent, and the intent of all parties at the time South Bay drafted the document granting the mortgage to Bayside, that the mortgage would secure South Bay's payment obligation to Bayside under the promissory

3

note.    Bonnie Charlton Aff. ¶ 10; Ronald Charlton Aff. ¶ 10.  Other than to opine that intent is irrelevant for reasons to be discussed later in this order, South Bay does not assert any facts contrary to those set forth in the Charltons' affidavits, and has not contested the Charltons' characterization of the events surrounding the parties' real estate transaction.  The mortgage and promissory note were drafted by South Bay's counsel.  The deed to the Georgetown property and the mortgage were recorded in the Register of Deeds Office in Georgetown, South Carolina, on September 17, 2007.  Complaint ¶¶ 13-14.

The first three paragraphs of the mortgage include the problematic provision, and state:

> THIS MORTGAGE is made this 11th day of September, 2007, between South Bay Properties, LLC, whose address is 5511 Capital Center Drive, Suite 105, Raleigh, North Carolina 27606 (collectively the "Mortgagor") and Bonnie N. Charlton, Ronald L. Charlton and Bayside Properties, Inc., (herein collectively referred to as the "Mortgagee"), whose address is P.O. Box 1958, Georgetown, SC 29440.
>
> WITNESSETH
>
> WHEREAS, *Mortgagor is now indebted to the Mortgagee* in the principal sum of Fourteen Million Five Hundred Eighty Thousand Six Hundred Sixty-Two and 92/100 ($14,580,662.92) Dollars, *as evidenced by* that certain Promissory Note *of even date herewith* in the amount of Fourteen Million Five Hundred Eighty Thousand Six Hundred Sixty-Two and 92/100 ($14,580,662.92) Dollars (the "Note") which by reference is made a part hereof to the same extent as though set out in full herein.
>
> NOW, KNOW ALL MEN, that the Mortgagor, in consideration of the aforesaid debt, and in order to secure the payment thereof, and of any other and further sums for which the Mortgagor may be indebted to the Mortgagee at any time for advances made to or for its account by the Mortgagee, and to secure the performance of all the covenants, conditions, stipulations and agreements contained herein, and also in consideration of the further sum of Three ($3.00) Dollars to the Mortgagor in hand well and truly paid by the Mortgagee at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold and released and by these presents does grant, bargain, sell and release unto the Mortgagee, their successors and assigns, the following described premises:

> SEE EXHIBIT A ATTACHED HERETO AND
> INCORPORATED HEREIN BY REFERENCE

Complaint, Ex. B (Mortgage) (original emphasis omitted; all italics added by the court). South Bay contends that the mortgage is unsecured because it purports to be secured by a promissory note "of even date herewith" and no such note exists. The note, as established above, is dated September 12 – one day later.[1]

Bonnie and Ronald Charlton state in their affidavits that South Bay made payments pursuant to the note for approximately three years but eventually defaulted, leaving an approximate balance of $15,442,099.18 as of the date South Bay filed the bankruptcy petition. Bonnie Charlton Affidavit ¶ 7; Ronald Charlton Affidavit ¶ 7. At some point thereafter, South Bay determined that the language in the mortgage, as drafted by its lawyers, would enable it to void the mortgage and render the promissory note unsecured, which brings us to the present dispute.

## DISCUSSION

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 151 and 157, and this matter is a core proceeding pursuant to 28 U.S.C. § 157. The court may hear this matter pursuant to the General Order of Reference entered August 3, 1984, by the United States District Court for the Eastern District of North Carolina.

---

[1] The HUD Settlement Statement also is dated September 12, 2007. It reflects payment by South Bay to Bayside of a deposit in the amount of $1,350,000. The HUD statement was delivered to Bayside by South Bay's attorneys on September 18, 2007, one day after the mortgage and general warranty deed were filed with the Register of Deeds in South Carolina. The HUD Statement was accompanied by a series of checks made out to the Charltons in connection with certain lot sales, as well as a copy of the mortgage. All of these documents were prepared by South Bay's counsel. Defs.' Brief in Support of Mot. to Dismiss, Ex. C.

The familiar principles articulated in Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), guide the court's disposition of a motion for summary judgment. Both parties assert, and the court agrees, that no material facts are at issue and this matter is ripe for adjudication. In addition, Bayside, as the party against whom relief is sought, seeks summary judgment on all or a part of the claim and has filed supporting affidavits in connection with that request. See Fed. R. Civ. P. 56, made applicable in bankruptcy by Fed. R. Bankr. P. 7056.

South Bay, the plaintiff and debtor-in-possession, asks the court to void the mortgage as an invalid security interest pursuant to 11 U.S.C. § 544(a) for "one simple reason." According to South Bay,

> under long-established South Carolina law, Defendants' mortgage states that it was given as consideration for a promissory note "of even date herewith," and Defendants have not produced and have admitted that they cannot produce such a note. Accordingly, there are no genuine issues of material fact to be decided, and Plaintiff is entitled to judgment as a matter of law.

South Bay Mem. of Law in Support of Mot. for Sum. J. at 1-2. Bayside agrees that South Carolina law applies, but responds that the mortgage is valid under South Carolina state law and that South Bay is barred from asserting the invalidity of the mortgage by principles of estoppel. Accordingly, the court turns to the issue at hand: can the debtor-in-possession avoid the mortgage under § 544(a)? As discussed below, to resolve that issue, the court must first determine whether the mortgage is valid under South Carolina law.

**I.      Strong Arm Powers under 11 U.S.C. § 544(a)**

Section 544 extends to a trustee or chapter 11 debtor-in-possession certain strong arm powers that come into effect as of the commencement of the case and enable the trustee or debtor-in-possession to avoid an obligation of the debtor. In relevant part, it provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor existed.
>
> * * *
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(1), (3).

At issue in this matter is application of § 544(a)(1)[2], pursuant to which South Bay contends that it has the standing of a judicial lien creditor without regard to any actual knowledge it may have.

---

[2] Section 544(a)(3) is unavailable to South Bay. The Court of Appeals for the Fourth Circuit held, in In re Hartman Paving Inc., 745 F.2d 307, 309 (4th Cir. 1984), that "a debtor-in-possession, acting as a bona fide purchaser pursuant to Section 544(a)(3), cannot invalidate a deed of trust where he is an original party to the deed of trust and had actual notice of its existence." In re Law Developers, LLC, 404 B.R. 136, 139 (Bankr. E.D.N.C. 2008) (interpreting Hartman and concluding that "[a] debtor-in-possession with notice of the deed of trust is not 'innocent' and therefore cannot prevent reformation of the deed of trust under North Carolina law"). South Bay has full knowledge of the mortgage and deed of trust, given that its attorneys drafted them for South Bay's benefit, and thus cannot stand in the shoes of a bona fide purchaser under § 544(a)(3).

Under that statute, the question before the court becomes whether a hypothetical lien creditor, i.e. South Bay, with a judicial lien on the property as of the date of the bankruptcy petition, could void the mortgage pursuant to controlling state law. Bayside does not contest South Bay's construction of § 544(a)(1).

## II.   South Carolina State Law

The real gravamen of the parties' dispute is the validity of the mortgage under South Carolina state law, which turns entirely on the court's construction of the law of that state.

In the interest of clarity, the court acknowledges at the outset its agreement with Bayside's argument to the effect that this court is not bound by another decision from this district, In re Head Grading Co., Inc., 353 B.R. 122 (Bankr. E.D.N.C. 2006) (holding that a deed referring to a promissory note "of even date herewith," when the note has a one-day discrepancy as in this case, is invalid under North Carolina law). As Bayside points out, Head Grading was decided with reference to the law of North Carolina, not South Carolina. The court's review of South Carolina law dating back to 1881, beginning with three early South Carolina Supreme Court cases, convinces the court that the mortgage is valid under the laws of that state.

The South Carolina Supreme Court's decision in McCaughrin & Co. v. Williams, 15 S.C. 505, 517 (S.C. 1881), also involved a date discrepancy. In that case, a mortgage cited a "certain bond or obligation, bearing date December 8th, 1874," but "no such bond as described [in the mortgage] had been executed." Id. at 515. A bond "was, however, executed on December 21st, 1875, one year after the mortgage," and there were two notes dated December 8th, 1874, in a total amount differing from the one set forth in the mortgage. The court framed the question thusly: "Is a mortgage of land a valid security, which recites a bond to be secured by it, which bond in fact was

not executed before the mortgage or at the same time with it?" Id. at 516. The answer, the court held, is yes. The court cited with approval this explanation of the applicable doctrine:

> In *Jones on Mort.*, § 353, we find the doctrine laid down in these words: "A deed of trust or mortgage is valid without any note or bond, although it purports to secure a note or bond and substantially describes it. The mortgage debt exists independently of the note. The inquiry is: Does the debt exist? If it does, it is not essential that there should be any evidence of it beyond what it furnished by the recital of the deed. The validity of a mortgage does not depend upon the description of the debt contained in the deed, nor upon the form of the indebtedness, whether it be by note or bond or otherwise; it depends rather upon the existence of the debt it is given to secure. . . .

Id. at 516-17.

Several years later, in Plyler v. Elliott, 19 S.C. 257 (S.C. 1883), the same court concluded that a note had been rendered void due to material alteration after its execution (the payee had added the words "with 15% interest," then scraped them off with a knife), but that the mortgage remained enforceable. "It must be kept in mind," the court explained, "that there is a difference between the debt itself and the securities for it" – in particular, "in no proper sense can the mortgage be regarded as a security merely for the bond, which, being only the evidence of the debt, may be displaced by substitutes or lost or destroyed, leaving the mortgage as a subsisting security for the debt in a new form." Id. at 263-64. The Plyler court also made short shrift of an error in the mortgage with respect to the promissory note it secured; indeed, the court literally disregarded it. "Even disregarding the mistake in the description of the note," the court wrote, "it does not seem to us that such an erroneous reference in the defeasance of the mortgage should be allowed to have the great effect claimed for it," which would have been to "change the whole structure and effect of the instrument." Id. at 266.

9

Shortly thereafter, the court allowed parol testimony to "show what debt the mortgage was really intended to secure." Moses v. Hatfield, 27 S.C. 324 (S.C. 1887). In Moses, a mortgage was given "to secure the payment of a certain note described in the mortgage," but the note "was never given" and, instead, future advances were made. The court concluded that the mortgage was valid and secured the advances, reasoning as follows:

> First, it is contended that the court erred in receiving parol testimony to show what debt the mortgage was really intended to secure. Now, while it is quite true that a written contract cannot be contradicted or varied by parole evidence, yet such evidence is competent to apply a written contract to its proper subject-matter; as for example, in case of a mortgage, to the debt really intended to be secured thereby. . . . "A deed of trust or mortgage is valid without any note or bond, although it purports to secure a note or bond, and substantially describes it. The mortgage debt exists independently of the note. The inquiry is, does the debt exist? * * * The validity of a mortgage does not depend upon the description of the debt contained in the deed, nor upon the form of the indebtedness, -whether it be by bond, note, or otherwise. It depends, rather, upon the debt it is given to secure." So, . . . "[i]t is not necessary that the mortgage should express on its face that it is given to secure future advances. It may be given for a specific sum, and it will then be security for a debt to that amount.

Id. at 540 (internal citations to sections of 1 Jones, Mortgages omitted).

Old and dusty as these cases may be, this court has found no more recent precedent to contradict them, and they appear to have established a lasting legal footprint.[3] See also, e.g., Platt v. Carroll, 119 S.E. 180, 183 (S.C. 1923) (reaffirming that "the validity of a mortgage does not depend upon the description of the debt contained in the deed"). An opinion from the Court of Appeals for the Fifth Circuit brings this point home:

> As to this issue it is well established that the validity of a mortgage is dependent only on the existence of a debt actually secured by the mortgage and not on the

---

[3] The McCaughrin decision was most recently cited in In re Daufuskie Island Properties, LLC, 431 B.R. 649, 656-57 (Bankr. D.S.C. 2010), for a proposition different from (though not in contradiction to) the precedent relevant to the instant case.

10

> description of the debt contained in the instrument. [citations omitted] The actual existence of a subsisting debt at the time of foreclosure may be established by parol testimony, [citing Moses, among others], and where it is established that the notes or bonds, or other evidence of indebtedness described in the mortgage did not exist, the mortgage may, nevertheless, be foreclosed. Moses v. Hatfield, supra.

Tropicana Shipping, S.A. v. Empresa Nacional Elcano De La Marina Mercante, 366 F.2d 729, 733 (5th Cir. 1966) (internal citations omitted).

The evident trend among those cases is to focus on substance over form and to reject efforts to assign undue weight to minor errors in descriptions of debt. South Carolina courts also have expressed a corresponding willingness to allow parol evidence as necessary to illuminate the purpose of the mortgage. Parol evidence "may be admitted to apply a written contract to its proper subject-matter, as, per example, a mortgage to the debt really intended to be secured thereby." Lindsay v. Garvin, 9 S.E.862, 862 (S.C. 1889); see also, e.g., Dangerfield v. Brown, 186 S.E. 641, 644-45 (S.C. 1936) (citing Moses and noting that the "strict constructionist may sometimes make a fetish of the rule which rejects evidence which it is claimed varies the terms of a written contract, and thus sacrifice the substance to the shadow").

In a perfect legal world, this court would be able to review more current South Carolina case law addressing modern iterations of these issues, but in this matter that opportunity simply does not exist. The court is reassured, however, by recent decisions from other federal courts which, in cases construing similar scenarios, reach conclusions that align with those cited above. In Tilden Commercial Alliance v. Brucap Assocs., 158 B.R. 10 (Bankr. E.D.N.Y. 1993), for example, the debtor gave guarantees to Tilden on August 21, 1984, and then executed a mortgage in favor of Tilden on January 6, 1985, which purported to secure "certain guarantees by the mortgagor of even date herewith." A third party, the FDIC, also had a mortgage with the debtor and had recorded it

11

a year after the Tilden mortgage was recorded. The FDIC sought to establish priority, arguing that "because the Guarantees were not in fact created 'of even date', the Tilden Mortgage [was] void for lack of consideration." Tilden, 158 B.R. at 12-13.

The bankruptcy court looked to New York law, and concluded that where there is "'no mistake about the agreement, and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected.'" Id. at 14 (citation omitted). In that case, the debtor prepared the documents, and readily attested to its intent in doing so – a refreshing contrast to the case at bar. See also Chemical Bank v. United States Lines (S.A.), 132 B.R. 271, 278 (Bankr. S.D.N.Y. 1991) (construing New York law and pointing out that "where the intentions of parties are clear, the court will not elevate form over substance and allow a windfall to a party"), quoted in Tilden, 158 B.R. at 14.

Another court reluctant to grant a windfall, the Court of Appeals of Michigan, cited Tilden with approval in Knapp v. National City Bank of Michigan/ Illinois, 2003 WL 22113984 (Mich. App. Sept. 11, 2003) (citing Tilden). In Knapp, the appellate court applied Michigan state law in concluding that a mortgage referring to a "Note of even date herewith" was valid and did secure the debts it purported to secure, even though there was no "note" in existence. The mortgage should have referred to a forbearance agreement, not a note. The court held that insertion of the wrong term in the document was not fatal because, based on all the circumstances, it was "clear that the parties were referencing the forbearance agreement." Knapp, 2003 WL 22113984 at *3 (citing a 1863 Michigan case in which the Michigan Supreme Court "upheld a mortgage where the debt was unspecified but there were other means to ascertain the unpaid balance").

Facts similar to those in the instant case also were at issue in <u>Carmack v. Tri-County Trust Co.</u>, 94 B.R. 148 (W.D. Miss. 1988). In that case, the debtor executed four separate promissory notes between March 1983 and April 1985. The court described the ensuing issue as follows: "Although all appeared in order with respect to the transactions, a problem was concealed in the paperwork. Notes 1 through 4 inclusive stated that they were 'secured by a collateral agreement of 3-4-81.' No such collateral agreement existed at the time of execution or at any time subsequent, The execution date of Collateral Agreement A was 9-4-81." <u>Id.</u> at 149. In the face of a challenge from a creditor, the court allowed testimony from the lending bank and the debtor, and held that

> [i]n light of [those] observations, it is clear the error in the collateral reference date in the promissory notes is a clerical error. "[Clerical errors] do not defeat the intentions of the parties." [citation omitted] "Errors or inaccuracies in the description of the note secured by the mortgage will not invalidate the mortgage if the intention of the parties is apparent, or the intention of the parties can be otherwise identified." 59 C.J.S. <u>Mortgages</u> § 112(d) (1974 & Supp. 1988).

<u>Id.</u> at 152. The court discussed multiple other cases in which "the mortgagors could not escape [the mortgage] because of an erroneous description of the obligation." <u>Id.</u> at 152, <u>quoting</u> <u>E.E.E., Inc. v. Hanson</u>, 318 N.W.2d 101, 106-07 (N.D. 1982); <u>see also, e.g.</u>, <u>Mortgage Assoc., Inc. V. Hendricks</u>, 187 N.W.2d 313, 316 (Wis.1971) (court found note to be secured and held "a mistake in reciting the date of the note will not in and of itself invalidate the mortgage if the note can be identified by other means").

While the cases just discussed do resonate in that they present similar facts, the court must emphasize that in this case, as in the cases above, the paramount factor is whether the mortgage could be avoided under controlling state law. This case turns wholly on the court's construction of the applicable law of the State of South Carolina.

Notably, in this case, South Bay makes no mention of its intention at the time the mortgage, guarantees, and deed were prepared. It also is telling that South Bay does not contest the representations made by Bonnie and Ronald Charlton in their affidavits, wherein they assert that it was the intent of all parties, South Bay included, to ensure that the mortgage secured the debt evidenced by the promissory note. In fact, it would strain credulity long past the breaking point to suggest otherwise.[4] Accordingly, the court assumes that the debtor originally entered into the mortgage in good faith, and in fact did intend for the mortgage to secure its debt to Bayside. Had the debtor and its counsel intentionally drafted the documents and proceeded through the related transactions with the intent of ultimately disavowing them on the grounds asserted here, such an effort would, obviously, raise a host of new and exceedingly serious questions.

The court's review of South Carolina case law persuades it that the law of that state embodies the same common sense, anti-windfall approach outlined in Tilden and Carmack. The court has little difficulty concluding that under the laws of South Carolina, the mortgage would not be found void or a nullity. Because that conclusion is dispositive of South Bay's effort to avoid the

---

[4] Evidence that the mortgage was intended to secure the promissory note dated September 12, 2007 is abundant and uncontroverted. Both the mortgage and note are for the same amount, $14,580,662.92. Both list Bonnie Charlton, Ronald Charlton, and Bayside Property, at identical addresses, as the lenders. Both list South Bay as the borrower. Both show a Georgetown County, South Carolina caption. The promissory note at issue is the only one between these parties, and is the only note to which the mortgage could possibly refer. The South Carolina court decisions discussed above, in which challenged mortgages were found valid, had far fewer facts to work with than appear in this case. Those cases also did not feature a debtor who drafted the problematic documents, made payments pursuant to them for years, and then sought to take advantage of its own error.

mortgage under § 544(a), the court will deny South Bay's motion for summary judgment, enter summary judgment in favor of Bayside, and dismiss the adversary proceeding.

**SO ORDERED.**

**END OF DOCUMENT**